## Appeal of R. H. Thayer, Trustee.

An assignee of a mortgage, for valuable consideration, without notice that the assignment from the mortgagee to the assignor was without consideration, being in settlement of oil margins, is not affected by the defect.

A mortgagee who, upon the sale of the property, satisfies his mortgage in consideration of an assignment of an equal amount "out of the first moneys to become due and payable according to the terms of" the mortgage for a larger amount given for purchase money, is entitled to priority of payment over the residue of the sum secured by the mortgage.

(Argued April 27, 1887.   Decided May 9, 1887.)

July Term, 1886, No. 25, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Certiorari sur appeal from a decree of the Common Pleas of Erie County dismissing exceptions to an auditor's report, and ordering distribution of the proceeds of a sheriff's sale of real estate. Affirmed.

This was an action of scire facias sur mortgage, in which judgment was entered for the plaintiff, and thereupon the mortgaged premises were sold on levari facias.

The facts as found by the auditor, E. L. Whittelsey, Esq., were stated in his report, which was as follows:

From the evidence it appears that the mortgaged premises were owned January 1, 1883, by Emily Thayer, now deceased, the wife of R. H. Thayer; that on that day she and her husband executed and delivered to N. F. Hilton and James A. Waugh a mortgage upon the said land for the sum of $10,000, which was duly recorded February 16, 1883, in Mortgage Book No. 3, p. 13, to secure the payment of four notes of the said R. H. Thayer for $2,500 each, with interest from January 1, 1883. This mortgage was assigned to W. A. Pullman by deed dated September 4, 1883. Emily Thayer and R. H. Thayer, her husband, conveyed the mortgaged premises to Edward J. Cowell, and to secure the payment of the balance of purchase money Cowell ex-

---

NOTE.—For the defenses permissible against the assignee of a mortgage, see note to Thompson v. Humboldt Safe Deposit & Trust Co. post, 450.

ecuted to R. H. Thayer a mortgage of even date for $13,860 and interest, on which judgment was recovered, execution issued, and the premises sold in this case.

To enable Thayer and wife to make the sale to Cowell, Thayer requested Hilton & Waugh to procure a satisfaction of the $10,000 mortgage, and to take in lieu thereof an assignment of $10,000 of the Cowell mortgage. This was done, and Thayer assigned to N. F. Hilton "the amount of $10,000 of the same out of the first moneys to become due and payable according to the terms of the said mortgage." This assignment was recorded October 2, 1883. Hilton & Waugh became indebted to the Merchants & Manufacturers Bank, of Pittsburgh, in the sum of $26,000, for which said bank held as collateral pipe line oil certificates, to the amount of 35,000 barrels. These certificates were claimed by the Humboldt Safe Deposit & Trust Company, of Erie. In order to avoid a lawsuit about them, the Merchants & Manufacturers Bank surrendered the certificates and in place thereof took a conveyance from Hilton & Waugh of an interest in some oil territory in Venango county, Pennsylvania, and an assignment from N. F. Hilton of all his right, title, interest, claim, and demand of, in, and to the said mortgage assigned to him by R. H. Thayer, as above stated, and specifying his interest to be $10,000 and interest from October 1, 1883. This assignment was made to Wilson A. Shaw, who is the cashier of the Merchants & Manufacturers Bank. It is dated July 19, 1884, and recorded in Mortgage Book No. 6, p. 24.

Emily J. Thayer, wife of R. H. Thayer, died October 22, 1884, intestate, and left, surviving her, her husband, R. H. Thayer, and four children, to wit: Louise I., Nellie G., Edward N., and Reed H. Thayer, Jr. The mortgage, although in the name of R. H. Thayer, belongs to his wife, Emily J. Thayer, it being for the purchase money of her real estate; and Thayer now declares that the fund as represented by him belongs to his children as above stated.

On the 14th day of August, 1884, Wilson A. Shaw caused a scire facias to be issued upon said mortgage for the use of himself and R. H. Thayer, which was duly prosecuted to judgment September 26, 1884, which was liquidated at the sum of $15,435.42. Upon this judgment a writ of levari facias was duly issued and the mortgaged premises sold May 1, 1885, to Wilson A. Shaw, for the sum of $11,000. The sheriff made return that

the said Wilson A. Shaw is a lien creditor, having a lien on said land, and as such, entitled to the sum of $10,595.99, and that he had received the receipt of said Wilson A. Shaw for the sum of $10,595.99, and the remainder of said purchase money, to wit, the sum of $404.01, he had retained. To this return R. H. Thayer (trustee for Louise I. Thayer, Nellie G. Thayer, Edward N. Thayer, and Reed H. Thayer, Jr., children and heirs at law of Emily Thayer, deceased) filed exceptions and disputes the right of Wilson A. Shaw, the purchaser, to any of the money mentioned in said return, and alleges that in no event is he entitled to more than about one third of the purchase money or proceeds of sale, and alleges that all of the money not going to said Shaw belongs to R. H. Thayer, trustee, as aforesaid; and on his application the auditor was appointed as provided by an act of assembly in such case made and provided.

The evidence further shows that R. H. Thayer commenced to deal with Hilton & Waugh, who were oil brokers, some time in 1882, and continued until some time in 1883. The dealings were buying and selling oil by Hilton & Waugh for Thayer; speculative transactions, buying and selling upon margin, and amounted to about 1,500,000 barrels. In these sales the oil was never actually delivered. The transactions were merely speculative, and a settlement of the differences included the four notes, for payment of which the first mortgage was given. When they purchased the oil, Hilton & Waugh, the brokers, received certificates therefor, issued by the pipe lines, which certificates were transferred when the oil was bought and sold.

There is no evidence that Wilson A. Shaw had any notice or knowledge when he purchased the mortgage from Hilton & Waugh that it belonged to Mrs. Emily Thayer, or that the assignment was a settlement of differences in these oil transactions.

R. H. Thayer, in trust for his children, claims in the first place that he is entitled to the entire fund in controversy, because he alleges that the assignment from himself to Hilton & Waugh was without consideration, and void, it having been given in settlement of a speculative or gambling transaction. Second, that in any event he is entitled to his *pro rata* share with Wilson A. Shaw, of the fund, as part owner of the mortgage.

In reply to this Shaw claims that the assignment to him being on its face absolute, Thayer is estopped from showing any equi-

ties that may exist between himself and Hilton & Waugh, of which he (Shaw) had no notice or knowledge, and that he is entitled to $10,000 of the first money out of the proceeds of the sale of the mortgaged premises by the terms of the assignment to him, and interest from date of the assignment. There is little, if any, conflict in the evidence as to the nature of the transactions between Thayer and Hilton & Waugh; they were dealings in oil certificates by way of margins; settlements of differences by payments of the gain or loss. This kind of transactions has been held to be mere wagers, and void, and therefore not enforceable at law on account of the want of consideration. Fareira v. Gabell, 89 Pa. 89; North v. Phillips, 89 Pa. 250; Griffith's Appeal, 16 W. N. C. 249.

If the mortgage had been given for the settlement of such transaction, and the mortgagor, or those claiming under him, were contesting it with the present holders, it could not be enforced. Griffith's Appeal, 16 W. N. C. 249.

But such is not the case under consideration. It is admitted that the consideration, or debt, secured by the mortgage is sound, it having been given for the purchase money of real estate; and no attempt is made to defend against it. But it is contended that the consideration of the assignment from R. H. Thayer, the mortgagee, to N. F. Hilton, is vicious, it being for the settlement of differences in a stock gambling transaction. Assuming this to be true, how does this affect W. A. Shaw, the assignee of N. F. Hilton? He had nothing to do with it, and had no knowledge of the vice therein when he purchased the $10,000 of the mortgage. The evidence shows that he paid a valuable consideration for this assignment. He is therefore an assignee for value, without notice of any vice or defect in the consideration of the transfer from Thayer to N. F. Hilton. He was not bound to inquire of Thayer, the mortgagee, as to the consideration of the assignment to Hilton. The assignment showed that he had parted with all his interest in the $10,000. Shaw was only bound to inquire of the mortgagor as to the defenses to the mortgage. Mott v. Clark, 9 Pa. 399, 49 Am. Dec. 566; Taylor v. Gitt, 10 Pa. 428; McConnell v. Wenrich, 16 Pa. 365; Pryor v. Wood, 31 Pa. 142; Reineman v. Robb, 98 Pa. 474.

If R. H. Thayer suffers by the application of these principles, he is alone to blame; for he was a party to the stock gambling

transaction complained of, and armed Hilton with the assignment of the mortgage, thus giving him the evidence of ownership and enabling him thereby to induce W. A. Shaw to part with his property on the strength of such apparent ownership. If it can be said that Thayer is one of two innocent parties who must suffer by the wrongdoing of a third, the well known rule that he who gives the wrongdoer the means of committing the injury must bear alone the consequences is against him in this case, and Shaw had a good and valid assignment of $10,000 of the mortgage and is entitled to participate in the distribution of the proceeds of the sale of the mortgaged premises. This being so, the remaining question to be decided is: Is Shaw entitled to be first paid out of the proceeds, or is he to be paid *pro rata* with R. H. Thayer, the owner of the remainder of the mortgage? The answer to this question depends upon the construction of the assignment from R. H. Thayer to N. F. Hilton, acknowledged October 1, 1883, in which he assigns "the amount of $10,000 of the same out of the first moneys to become due and payable according to the terms of the said mortgage."

It was decided in Donley v. Hays, 17 Serg. & R. 400, that the assignees of the fractional part of a debt secured by mortgage take *pro rata* in case the mortgaged premises do not sell for enough to pay the mortgage debt in full, and that decision has been followed in a number of cases, the latest of which is Patrick's Appeal, 105 Pa. 356.

On the other hand it was decided in McLean's Appeal, 103 Pa. 258, that parties have a right to make a contract giving the assignee of a fractional part a priority of payment. The language of the assignment in that case is "out of the one-eighth part of said bond and mortgage and the moneys due me thereon, the sum of $2,650, together with the interest thereon from the date hereof, hereby authorizing and directing the administrator of the estate of the said Milan Barney, deceased, to assign or pay over unto the said L. L. Ayers and A. H. Decker (assignees), their executors, administrators, or assigns, out of my share of said mortgage, the said sum, with interest thereon as aforesaid."

The assignee afterwards assigned all his right, title, and interest, as such heir, in the bond and mortgage above recited and the moneys arising therefrom (the estate in the same hereby granted being all my right, title, and interest in the one-eighth part of said sum secured by the said bond and mortgage, less the part and amount heretofore assigned by me to Decker and Ayers

as above recited), and do hereby order and authorize Milan Barney, the administrator of Milan Barney, deceased, to pay over to said Covingham & Paine the balance of all money arising from said bond and mortgage, less the amount heretofore assigned as aforesaid. It was held in that case that the assignee of the $2,650 was entitled to be first paid on distribution of the proceeds of the mortgage.

Here the assignment is the amount of $10,000 of the same out of the first moneys to become due and payable, according to the terms of said mortgage. It is a rule that the language of a written instrument is to be construed the strongest against the maker thereof. The strongest construction that can be put upon the language of this assignment against the assignor is that the $10,000 assigned to N. F. Hilton is to be paid out of the first moneys realized on the mortgage. We can also be guided in the construction by considering the situation of the parties at the time the assignment was made and the property which is the subject of the assignment and the intention and purpose of the parties in making it. 2 Pars. Cont. 499.

Prior to the making of this assignment Hilton & Waugh had a mortgage against the mortgaged premises for the sum of $10,000, which was a first lien thereon, and had it not been satisfied would now be entitled to be first paid out of the money now for distribution. At the request of Thayer, who wished to make a sale of the property to Cowell, who required it to be clear of liens, Hilton & Waugh satisfied their first mortgage and took in place thereof an assignment of $10,000 of the mortgage given by Cowell to Thayer for balance of purchase money out of the first money due and payable.

A fair construction of the assignment, under the circumstances, is that Thayer intended by it to give Hilton a first lien on the mortgaged premises as to the $10,000, the same as that satisfied by Hilton & Waugh, at their request or at the request and for the accommodation of Thayer. I am of the opinion that Thayer is entitled to no part of the fund for distribution until the $10,000 assigned to Hilton, and by him assigned to W. A. Shaw, is first paid.

Shaw is also entitled to the interest thereon from the date of the assignment to Hilton, October 2, 1883, to date of the sale of the property by the sheriff. The ownership of the debt carries with it the interest, which is a legal incident thereto. Broom, Legal Maxims, 479.

It is admitted that the taxes due the city of Erie are to be paid out of the fund to the amount of $280.60. The fund is therefore distributed as follows, to wit:

Amount for distribution....................$11,000.00
To costs on writ....................$86.10
" list of liens, etc..................  4.10
" auditor, .......................  50.00
. " prothonotary's report . . ..........  5.00
                                          ————— 145.20

   Balance over .........................$10,854.80
   To Erie city taxes ........................  280.60

   Balance to W. A. Shaw .................$10,574.20

R. H. Thayer, trustee, filed the following exceptions to the report:

1. The auditor erred in distributing to W. A. Shaw the balance of the fund, to wit, $10,293.60, after deducting the costs and taxes.

2. The auditor erred in not distributing the balance $10,-293.60 to R. H. Thayer, trustee.

3. The auditor erred in his conclusion of law that the fund should not be distributed *pro rata* between R. H. Thayer, trustee, and W. A. Shaw.

4. The auditor erred in his conclusion of law that W. A. Shaw stood in any better position than his assignors, Hilton & Waugh.

5. The original mortgage was made by Emily Thayer and R. H. Thayer, her husband, for $10,000, as a collateral security to Hilton & Waugh for margins in a speculative transaction; and this mortgage was discharged for the purpose of selling the lands mortgaged to Cowell; and an assignment of $10,000 of the mortgage made by Cowell to Thayer, taken in lieu thereof, was but a novation of the security and, no new or other consideration being given, was void. At most it was but a collateral security for $10,000, and would not carry with it interest; and the auditor erred in deciding that the assignment carried with it interest on the amount assigned.

The court below, GALBRAITH, P. J., dismissed the exceptions,

confirmed the report, and ordered distribution accordingly; and this was assigned as error.

*F. F. Marshall,* for appellant.—A creditor taking a chose in action as collateral security for a pre-existing indebtedness is not a purchaser for value.   Ashton's Appeal, 73 Pa. 153.

The consideration for the assignment of the $10,000 of the Cowell mortgage, by Thayer to Hilton, being given by way of margins to secure a settlement of differences in a speculation in oil certificates was a gambling transaction and void; and the assignee of Hilton can stand in no better position than Hilton did. Elliott v. Callan, 1 Penr. & W. 24.

A judgment entered upon a bond, with warrant of attorney originally given to cover margins in a stock gambling transaction, will not be enforced in the hands of an assignee.   Griffith's Appeal, 16 W. N. C. 249.

It matters not that the broker may have the stock on hand, which he could have delivered if required, if a delivery was not intended by the parties.   Id. 250.

A bond given by way of margin to secure a settlement of difference in a stock gambling transaction is void for want of a good and legal consideration.

To entitle an assignee of a bond to the protection of a bona fide purchaser for value without notice, he must not only have paid a valuable consideration for the assignment, but it must have been actually paid before notice of the consideration being void.   Griffiths v. Sears, 112 Pa. 523, 4 Atl. 492; Edgar v. Kline, 6 Pa. 327.

A promissory note given in a gambling transaction is void, although negotiable in form and in the hands of an innocent holder for value.   Harper v. Young, 112 Pa. 419, 3 Atl. 670.

Every species of gaming contract, whether of insurance by a valued policy when the insured has no interest, or the purchase of stocks or other commodities without the intention to deliver or receive them, is unlawful in this state.

A transaction in stocks by way of margin, settlement of differences, and payment of gain or loss without intending to deliver stocks, is a mere wager, which the law does not sanction and will not carry into effect.   Waugh v. Beck, 114 Pa. 422, 60 Am. Rep. 354, 6 Atl. 923.

In any event Shaw was entitled to only a *pro rata* share of the

fund, he holding an assignment of but a portion of the mortgage; and the mortgage having been foreclosed and the mortgaged premises sold on the judgment of foreclosure and not bringing sufficient at the sheriff's sale to pay the whole mortgage debt, the fund should be distributed *pro rata.* Donley v. Hays, 17 Serg. & R. 400; Perry's Appeal, 22 Pa. 43, 60 Am. Dec. 63; Hancock's Appeal, 34 Pa. 155.

The assignment from Thayer to Hilton is "the amount of $10,000 of the same out of the first moneys to become due and payable according to the terms of said mortgage." This is nothing more than an assignment of the first instalments to the amount of $10,000, and which, if there was no other reason, might have entitled Hilton to receive the first money paid by the mortgagor, if paid when due; but when the fund for distribution arises from the sale of the mortgaged premises, the holders of the fractional parts of the mortgage are entitled to share in the distribution *pro rata*, without regard to the dates or times of the different assignments.

Where fractional parts of the same judgment debt are successively assigned to different persons, and the proceeds of the sale of the property are insufficient to pay them all, they take *pro rata* and not in the order of their assignment. Moore's Appeal, 92 Pa. 309.

When the fractional part of a mortgage debt is assigned by the mortgagee, and upon a sheriff's sale of the property bound by the mortgage the proceeds are insufficient to pay both the assignor and the assignee, they take *pro rata.* Patrick's Appeal, 105 Pa. 356; Hodge's Appeal, 84 Pa. 359.

*Theodore A. Lamb,* for appellee.—The assignee of a bond or other chose in action is only liable to secret equities of the obligor or debtor. Mott v. Clark, 9 Pa. 399, 49 Am. Dec. 566; Downey v. Tharp, 63 Pa. 322; Taylor v. Gitt, 10 Pa. 428; Pryor v. Wood, 31 Pa. 142; Blair v. Mathiott, 46 Pa. 263.

But such assignee is not subject to any secret equities not arising out of the instrument. Mullison's Estate, 68 Pa. 212; McConnell v. Wenrich, 16 Pa. 365.

It is an undisputed fact that Hilton & Waugh received $26,000 on the strength of the oil certificates. It is also an undisputed fact that the bank surrendered these certificates to the Humboldt Bank, in consideration of the assignment by Hilton to Shaw of the mortgage in question.

The fact that Hilton & Waugh did not own the certificates is not material. They apparently owned them, and they obtained the money by pledging them. If the bank had not neglected to have them indorsed, it could unquestionably have held them as against the true owner; and it is not clear that the Pittsburgh Bank could not have compelled the Humboldt Bank to pay its advances before surrendering them; but be that as it may, the banks had a right to compromise their claims, and that compromise was a perfect consideration for the transfer. Chamberlain v. M'Clurg, 8 Watts & S. 31; Rice v. Bixler, 1 Watts & S. 445.

And this is so, even though the parties act under a mutual mistake of law. McCoy v. Hutchinson, 8 Watts & S. 66.

The authorities cited by the learned counsel, to the effect that securities given to cover margins in stock gambling transactions will not be enforced in the hands of an assignee, are not in point, for in the case at bar the consideration of the mortgage is unquestioned.

In Griffiths v. Sears, 112 Pa. 523–530, 4 Atl. 492, the bond and mortgage were given to secure margins; and this court held that the assignee was entitled to recover against the makers, to the extent that the assignee had made advancements on the strength of a certificate of no set-off, before receiving notice that such certificate was false. The case fully supports the decision of the court below.


PER CURIAM:

The facts found by the auditor, confirmed by the court, fully sustain the conclusion that the assignment of the $10,000 of the first moneys to become due and payable was designed to give a priority of payment over the residue of the sum secured by the mortgage.

Decree affirmed and appeal dismissed, at the costs of the appellant.